[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13989
Non-Argument Calendar

_____

Agency No. A206-243-690


CARLA ELIA MUNGUIA-MEJIA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 12, 2019)

Before MARCUS, MARTIN and BRANCH, Circuit Judges.

PER CURIAM:

Carla Munguia-Mejia ("Munguia") seeks review of the Board of Immigration

Appeals' ("BIA") final order dismissing her appeal of an immigration judge's ("IJ")

denial of her application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.  In her petition, she argues that: (1) the BIA erred in holding as a matter of law that her specified particular social group -- women in a de facto union who are unable to leave the relationship with their male partner -- was not legally cognizable in light of Matter of A-B-, 27 I. & N. Dec. 316 (A.G. 2018), which was issued during the pendency of her appeal; (2) the BIA should have remanded her case to the IJ for further proceedings in the interests of justice, since she had articulated claims consistent with the precedent overruled by Matter of A-B-; (3) she was deprived of due process when she was not given the ability to present arguments to the IJ or BIA as to why the persecution she suffered met the new standards set forth in Matter of A-B-; and (4) the BIA denied her meaningful review of her challenge to the IJ's adverse credibility finding by declining to address that issue after concluding that Matter of A-B- independently foreclosed her asylum claim.  After careful review, we dismiss the petition in part and deny it in part.

Before addressing a petitioner's arguments on the merits, we must assess our subject matter jurisdiction de novo.  Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1297 (11th Cir. 2015).  We review alleged due process violations de novo.  Lapaix v. U.S. Att'y Gen., 605 F.3d 1138, 1143 (11th Cir. 2010).

We lack jurisdiction to review final orders in immigration cases unless "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1).  A petitioner fails to exhaust her administrative remedies for a particular claim when she does not raise that claim before the BIA.  Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250–51 (11th Cir. 2006).  To exhaust a claim, she must have previously argued "the core issue now on appeal" to the BIA.  Indrawati, 779 F.3d at 1297 (quotations omitted).

Even where the BIA sua sponte addresses a claim not raised before it, we will dismiss that claim on review, because the BIA did not have the opportunity to fully consider the claim and to compile a record adequate for judicial review.  Amaya-Artunduaga, 463 F.3d at 1250–51.  In Amaya-Artunduaga, the petitioner failed to challenge, without excuse or exception, the IJ's adverse credibility finding before the BIA, but the BIA nevertheless addressed the issue sua sponte and held that inconsistencies in the petitioner's narrative supported the IJ's finding.  Id. at 1249-50.  When the petitioner sought review of the adverse credibility finding in our Court, the government argued that we lacked jurisdiction over the claim because the petitioner had not raised the issue before the BIA.  Id.  We agreed, based on the exhaustion requirement found in the Immigration and Nationality Act, 8 U.S.C. § 1252(d)(1), even though the BIA had considered the issue sua sponte.  Id. at 1251.  We reasoned that reviewing the unexhausted claim would frustrate the goals of

3

avoiding premature interference with administrative processes and the consideration of the relevant issues by the agency; ensuring that the agency has a full opportunity to address the petitioner's claims; and allowing the BIA to compile a record sufficient for judicial review. Id. at 1250–51. In other words, we could not say whether the BIA had fully considered claims raised sua sponte since it did not have an opportunity to address the petitioner's arguments as to those claims. Id.

Where a petitioner seeks from us in the first instance a remedy the BIA was empowered to provide, she has failed to exhaust her administrative remedies. See Sundar v. I.N.S., 328 F.3d 1320, 1325 (11th Cir. 2003) (holding that the petitioner should have asked the BIA to reconsider and change its decision in a prior case where it possessed the authority to do so). The BIA may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. 8 C.F.R. § 1003.2(a). A motion to reconsider must be filed within 30 days after the mailing of a BIA decision. Id. § 1003.2(b)(2).

To be eligible for asylum, an alien "must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting [her]." 8 U.S.C. § 1158(b)(1)(B)(i). In other words, the alien must establish a nexus between the persecution and a statutorily protected ground. Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1200 (11th Cir. 2009). The alien bears the burden of showing her eligibility for asylum through

4

credible, direct, and specific evidence.  Xiu Ying Wu v. U.S. Att'y Gen., 712 F.3d 486, 492–93 (11th Cir. 2013); 8 U.S.C. § 1158(b)(1)(B)(ii).

In 2014, the BIA held that the particular social group of "married women in Guatemala who are unable to leave their relationship" was legally cognizable. Matter of A-R-C-G-, 26 I. & N. Dec. 388, 389, 392–94 (BIA 2014).  But on June 11, 2018, the Attorney General reversed course and overruled Matter of A-R-C-G-, deciding that the particular social group of "El Salvadoran women who are unable to leave their domestic relationships where they have children in common" was legally incognizable.  Matter of A-B-, 27 I. & N. at 319, 326, 346.  The Attorney General reasoned that the expansive category of particular social groups based on private violence was legally incognizable because it did not exist independently of the persecution members of the group experienced.  Id. at 319, 334–36. As a result, members of that group were not persecuted on account of their membership in that group, contrary to the statutory requirements.  Id. at 338–39.

The Attorney General clarified that an applicant seeking asylum on the basis of membership in a particular social group must show: (1) membership in a particular group that is comprised of members with an immutable characteristic, is defined with particularity, and is socially distinct within the relevant society; (2) membership in the group is a central reason for her persecution; and (3) the harm is inflicted by the government or by persons that the government is unable or unwilling to control.

Id. at 320.  Additionally, where the alien is a victim of private criminal activity, the Attorney General explained that the analysis must consider the availability of government protection, the possibility of internal relocation, and whether the persecution exists nationwide.  Id.  The Attorney General added that asylum claims stemming from domestic violence perpetrated by nongovernmental actors generally will not qualify for asylum because it is unlikely that the alien can show that the violence is an issue that the government is unwilling or unable to address, even if it is true that the government has problems effectively policing certain crimes or certain groups are more likely to be the victim of crimes.  Id.

Here, we lack jurisdiction to review the merits of Munguia's "social group" arguments -- that remand to the IJ was appropriate given her reliance on the previous precedent found in Matter of A-R-C-G-, and that the BIA improperly concluded that her asylum claim was precluded by Matter of A-B- -- because she did not raise them before the BIA.  For starters, Matter of A-B-, which directly addressed the viability of the specific type of particular social group under which Munguia sought asylum, was issued more than two months before the BIA dismissed her case.  See Matter of A-B-, 27 I. & N. at 316.  During that time she could have filed supplemental materials with the BIA that addressed Matter of A-B-'s impact or sought to establish her eligibility for asylum based on another protected ground, but she failed to do so. Or, Munguia could have filed a motion for reconsideration with the BIA seeking

6

remand based on the change in the law upon which she relied within 30 days of the BIA's dismissal, but she did not do so.  8 C.F.R. § 1003.2(a), (b)(2).

In Indrawati, we rejected the government's argument that the petitioner had not exhausted her claim that the BIA failed to provide reasoned consideration for its decision.  779 F.3d at 1299.  This was because it was "facially nonsensical" to fault her for not raising an argument about the lack of reasoned consideration displayed by a decision that was not yet in existence.  Id.  But Munguia's claims are distinguishable from the "reasoned consideration" claims presented in Indrawati.  To begin with, her decision to rely on Matter of A-R-C-G- does not constitute grounds for reversal or remand that arose only after the issuance of the BIA's decision.  Munguia, as the applicant, bore the burden of demonstrating that she was eligible for asylum on any of the statutorily authorized grounds, and while she initially asserted an alternative basis for asylum -- political opinion -- she did not pursue that claim before the IJ or the BIA.  Xiu Ying Wu, 712 F.3d at 492–93; 8 U.S.C. § 1158(b)(1)(B)(i)–(ii).  Thus, her failure to assert every ground on which she may have been eligible for asylum is not a legal error attributable to the BIA -- as is the case in a reasoned consideration claim -- but rather a failure on her part to carry her burden by demonstrating her eligibility on each of the applicable grounds.

Further, unlike "reasoned consideration" claims that allege a procedural error in the BIA's decision that necessarily springs into existence only upon the issuance

7

of that decision, Munguia challenges the substantive application of Matter of A-B- to her claim. But Matter of A-B- was issued more than two months before the BIA's dismissal of Munguia's appeal, which means she had the opportunity to address the impact of that decision on her appeal. Munguia never presented to the BIA any argument about the applicability of Matter of A-B- to her case, either during the pendency of her appeal or in a subsequent motion for reconsideration, which means that the BIA did not have an opportunity to fully consider the arguments she now raises for the first time in her petition for review. Amaya-Artunduaga, 463 F.3d at 1250–51. Accordingly, we dismiss Munguia's petition for lack of jurisdiction as to her Matter of A-B- related claims.

As for Munguia's due process claims, we are unpersuaded. A colorable due process violation requires the petitioner to show she was deprived of liberty without due process and the asserted error caused her substantial prejudice. Lapaix, 605 F.3d at 1143. To establish substantial prejudice, she must show that the outcome of the proceedings would have been different in the absence of the alleged violation. Id. In deciding whether the BIA's decision was the result of reasoned consideration, we look to see whether the BIA announced the decision in terms sufficient to allow for a reviewing court to see that it "heard and thought and not merely reacted." Indrawati, 779 F.3d at 1299 (quotations omitted).

8

In this case, the BIA did not violate Munguia's due process rights by failing to give reasoned consideration to her credibility claim. As the record reflects, the BIA explained that it declined to address her credibility argument because that issue was irrelevant in light of Matter of A-B-, which independently foreclosed her asylum claim. Nor did the BIA violate Munguia's due process rights by declining to remand her case to the IJ because she has not shown that the outcome would have been different in the absence of the alleged violation. Munguia bore the burden of establishing her eligibility for asylum on the basis of a protected ground. Xiu Ying Wu, 712 F.3d at 492–93; 8 U.S.C. § 1158(b)(1)(B)(i)–(ii). Although she initially sought asylum on the basis of both political opinion and membership in a particular social group, she abandoned her political opinion asylum claim during the proceedings before the IJ and did not challenge the IJ's conclusion that the claim was abandoned before the BIA. Similarly, the BIA determined that she abandoned her claim to CAT relief by not challenging it on appeal before the BIA, and she does not contest that determination in her petition for review.

Thus, the only basis for asylum that remained from her original application was her membership in the particular social group of women in Honduras in a de facto union who are unable to leave the relationship with their male partner. However, she cannot show and does not argue that remand would result in a different outcome in light of Matter of A-B-, which would preclude the BIA or IJ from

9

concluding that her proposed group was legally cognizable.  Matter of A-B-, 27 I. & N. at 319.  Further, she has offered no argument that her particular social group is not impermissibly circularly defined, nor that its cognizability is not foreclosed by Matter of A-B-.  Thus, she cannot show she was substantially prejudiced by the BIA's decision not to remand her case because she did not and cannot establish the required nexus between her persecution and her asserted protected ground.  8 U.S.C. § 1158(b)(1)(B)(i); Mehmeti, 572 F.3d at 1200; Lapaix, 605 F.3d at 1143.  Accordingly, because remand to the BIA would be futile, we deny her petition as to her due process claim.

**PETITION DISMISSED IN PART AND DENIED IN PART.**